1 | Rollin A. Ransom (SBN 196126)
rransom@sidley.com
2 | Lauren M. De Lilly (SBN 301503)
ldelilly@sidley.com
3 | SIDLEY AUSTIN LLP
350 South Grand Avenue
4 | Los Angeles, CA 90071
Tel.:   (213) 896-6047
5 | Fax:   (213) 896-6600

6 | *Attorneys for Plaintiffs*

7

8 | **UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

9

| 10 | ATLANTIC MUSIC GROUP LLC, ATLANTIC RECORDING | Case No. 8:25-cv-2677 |
|---|---|---|

ATLANTIC MUSIC GROUP LLC, ATLANTIC RECORDING CORPORATION, BAD BOY RECORDS LLC, ELEKTRA ENTERTAINMENT GROUP INC., ELEKTRA ENTERTAINMENT LLC, FUELED BY RAMEN LLC, RHINO ENTERTAINMENT LLC, WARNER MUSIC INTERNATIONAL SERVICES LIMITED, WARNER RECORDS INC., WARNER RECORDS LLC, 300 ENTERTAINMENT LLC, W CHAPPELL MUSIC CORP., W.C.M. MUSIC CORP., WARNER CHAPPELL MUSIC, INC., and WARNER-TAMERLANE PUBLISHING CORP.,

Plaintiffs,

vs.

PACIFIC SUNWEAR OF CALIFORNIA, LLC; and DOES 1-10, inclusive

Defendants.

Case No. 8:25-cv-2677

**COMPLAINT FOR:**

1. **DIRECT COPYRIGHT INFRINGEMENT**

2. **CONTRIBUTORY COPYRIGHT INFRINGEMENT**

3. **VICARIOUS COPYRIGHT INFRINGEMENT**

**DEMAND FOR JURY TRIAL**

COMPLAINT

Plaintiffs Atlantic Music Group LLC, Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Elektra Entertainment LLC, Fueled by Ramen LLC, Rhino Entertainment LLC, Warner Music International Services Limited, Warner Records Inc., Warner Records LLC, 300 Entertainment LLC, W Chappell Music Corp., W.C.M. Music Corp., Warner Chappell Music, Inc., and Warner-Tamerlane Publishing Corp. (individually, a "Plaintiff," and collectively, "Plaintiffs"), by and through their attorneys, allege as follows:

## <u>NATURE OF THE ACTION</u>

1.      All Plaintiffs are subsidiaries of Warner Music Group Corp. ("WMG"), one of the world's largest music entertainment companies. Plaintiffs produce, manufacture, distribute, sell, and license some of the most iconic and popular sound recordings and musical compositions of all time, as well as many of today's biggest hits.

2.      Plaintiffs' sound recordings and musical compositions are protected by copyright law, which grants the copyright owner the exclusive right to, among other things, reproduce, distribute, and create derivative works of copyrighted works, to publicly perform musical compositions, and to publicly perform sound recordings by means of a digital audio transmission. An important portion of Plaintiffs'—and their artists' and songwriters'—revenue from sound recordings and musical compositions comes from licensing those sound recordings and musical compositions to others, who use Plaintiffs' musical works in videos, films, television shows, commercials, video games, and on social media.

3.      Defendant Pacific Sunwear of California, LLC ("PacSun") is a leading specialty retailer with approximately 350 stores across the United States. PacSun sells a combination of proprietary and branded casual apparel, accessories, and footwear designed to appeal to teenagers and young adults. PacSun has benefitted from and profited by infringing Plaintiffs' copyrighted sound recordings and musical compositions

on a massive scale in promotional content posted on social media platforms by and on behalf of PacSun.

4.      PacSun has promoted its products and brands to its *millions* of followers on social media sites, most notably Instagram and TikTok, including by producing and posting promotional videos to its various social media accounts. Additionally, PacSun expands its marketing reach by partnering with "influencers"—individuals with large social media followings who create videos promoting PacSun's products and then either post those videos directly to their own social media accounts on behalf of PacSun, or provide those videos to PacSun, which in turn posts them on PacSun's social media pages.[1] These videos (each, a "PacSun Video," and collectively, the "PacSun Videos") are integral to PacSun's promotional, marketing, and branding strategy. Critically, the PacSun Videos frequently feature unauthorized use of Plaintiffs' copyrighted sound recordings and musical compositions—usually featuring chart-topping and award-winning artists—as a principal and indispensable element of the PacSun Videos; indeed, there is typically no speaking or sound other than the music integrated into the PacSun Videos.

5.      While the PacSun Videos have been instrumental to the success of PacSun and Defendants Does 1-10 (collectively, "Defendants"), Defendants have not paid to use the copyrighted sound recordings and musical compositions that are featured in them. Furthermore, PacSun is a sophisticated, successful company with access to legal resources and a familiarity with intellectual property law, having enforced its own intellectual property rights against alleged infringers.[2]

---

[1] PacSun's social media advertising is similar to that of Vital Pharmaceuticals, Inc. d/b/a "Bang Energy," an energy drink and sports nutrition supplement company that recently was found liable for copyright infringement in two different lawsuits due to the same type of copyright infringement alleged herein. *See UMG Recs., Inc. v. Vital Pharms., Inc.*, No. 21-CV-60914-CIV, 2022 WL 2670339 (S.D. Fla. July 11, 2022); *Sony Music Entm't v. Vital Pharms., Inc.*, No. 21- 22825-CIV, 2022 WL 4771858 (S.D. Fla. Sept. 14, 2022).
[2] *See, e.g.*, *Pac. Sunwear of California, Inc. v. Kira Plastinina Style, Ltd.*, 364 F. App'x 330 (9th Cir. 2010).

6.     Yet, as to Plaintiffs alone, Defendants have misappropriated *at least 290* of the most popular and valuable copyrighted sound recordings and musical compositions in the market, using those creative works to build Defendants' brand profile and drive massive sales to Defendants without any compensation to Plaintiffs or their recording artists or songwriters. These works include sound recordings or musical compositions performed by some of the world's best-selling artists and songwriters, including Dua Lipa, Bruno Mars, Lizzo, Cardi B, and Ariana Grande (together with the other musical works listed on Schedule A attached hereto, "Plaintiffs' Musical Works"). Defendants not only failed to pay for the use of Plaintiffs' Musical Works, but by including these works in their promotional materials without Plaintiffs' consent, Defendants deprived Plaintiffs, their recording artists, and their songwriters of the ability to control how and where their musical works are used.

7.     Defendants' conduct has caused Plaintiffs substantial and irreparable harm. Plaintiffs bring this action to obtain redress for Defendants' infringement of Plaintiffs' valuable rights and to prevent further violations of those rights.

## **JURISDICTION AND VENUE**

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), insofar as this action arises under the Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 *et seq*.

9.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a), in that PacSun resides in the Central District of California pursuant to 28 U.S.C. § 1391(c).

10.     This Court has personal jurisdiction over Defendants because PacSun is a limited liability company with its principal place of business in California, or, alternatively, because Defendants have been doing business continuously in and maintain a regular presence in this state and this District, a substantial part of the wrongful acts occurred within this state and this District, and the effects of

1    Defendants' unlawful conduct are directed toward and felt in this state and this

2    District.

3    ### THE PARTIES

4    ### Plaintiffs

5    11.    Plaintiff Atlantic Music Group LLC is a Delaware limited liability

6    company with its principal place of business at 1633 Broadway, New York, New

7    York.

8    12.    Plaintiff Atlantic Recording Corporation is a Delaware corporation with

9    its principal place of business at 1633 Broadway, New York, New York.

10    13.    Plaintiff Bad Boy Records LLC is a Delaware limited liability company

11    with its principal place of business at 1633 Broadway, New York, New York.

12    14.    Plaintiff Elektra Entertainment Group Inc. is a Delaware corporation with

13    its principal place of business at 1633 Broadway, New York, New York.

14    15.    Plaintiff Elektra Entertainment LLC is a Delaware limited liability

15    company with its principal place of business at 1633 Broadway, New York, New

16    York.

17    16.    Plaintiff Fueled by Ramen LLC is a Delaware limited liability company

18    with its principal place of business at 1633 Broadway, New York, New York.

19    17.    Plaintiff Rhino Entertainment LLC is a Delaware limited liability

20    company with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles,

21    California.

22    18.    Plaintiff Warner Music International Services Limited is a limited

23    company organized and existing under the laws of England and Wales, with its

24    principal place of business at 27 Wrights Lane, London, England.

25    19.    Plaintiff Warner Records Inc. is a Delaware corporation with its principal

26    place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

27

28

COMPLAINT

20.    Plaintiff Warner Records LLC is a Delaware limited liability company with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

21.    Plaintiff 300 Entertainment LLC is a Delaware limited liability company with its principal place of business at 1633 Broadway, New York, New York.

22.    Plaintiff W Chappell Music Corp. is a California corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

23.    Plaintiff W.C.M. Music Corp. is a Delaware corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

24.    Plaintiff Warner Chappell Music, Inc. is a Delaware corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

25.    Plaintiff Warner-Tamerlane Publishing Corp. is a California corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

### Defendants

26.    Defendant Pacific Sunwear of California, LLC is a California limited liability company with its principal place of business at 3450 E Miraloma Avenue, Anaheim, California.

27.    Upon information and belief, Defendants Does 1 through 10 are subsidiaries, affiliates, agents, licensees, franchisees, or representatives of PacSun, and/or are otherwise responsible for and proximately caused, and are causing, the harm and damages alleged in this Complaint. Plaintiffs presently are unaware of the true names and/or the involvement of the Defendants sued herein by the fictitious designations Does 1 through 10, and for that reason, sue them by those designations. Plaintiffs will seek leave to amend this Complaint to identify Does 1 through 10 when their true names and involvement in the infringements and other wrongful conduct hereinafter described are known.

COMPLAINT

# GENERAL ALLEGATIONS

## Plaintiffs and Their Copyrighted Works

28. Plaintiffs Atlantic Music Group LLC, Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Elektra Entertainment LLC, Fueled by Ramen LLC, Rhino Entertainment LLC, Warner Music International Services Limited, Warner Records Inc., Warner Records LLC, and 300 Entertainment LLC are engaged in the business of producing, marketing, promoting, distributing, selling, and/or licensing sound recordings to third parties for various kinds of uses, including for commercial uses in posts on social media platforms.

29. Plaintiffs W Chappell Music Corp., W.C.M. Music Corp., Warner Chappell Music, Inc., and Warner-Tamerlane Publishing Corp. are engaged in the business of developing, promoting, publishing, acquiring, administering, and/or licensing musical compositions, including for commercial uses in posts on social media platforms.

30. Plaintiffs invest substantial money, time, effort, and creative talent in discovering and developing recording artists and songwriters; in creating, advertising, promoting, selling, and licensing sound recordings embodying the performances of their exclusive recording artists; and in developing, publishing, administering, and licensing their repertoire of musical compositions. Plaintiffs' sound recordings and musical compositions are protected by copyright law.

31. Furthermore, many recording artists and songwriters do not permit their musical works to be used in social media advertising or are extremely selective about such uses. Accordingly, a license for the use of Plaintiffs' Musical Works for advertising or promotional purposes can be extremely valuable, since Plaintiffs do not allow those Musical Works to be used by everyone who desires a license. The use of Plaintiffs' Musical Works in advertising and marketing without Plaintiffs' permission can have a significant impact on the overall value of those Musical Works.

32.     Attached as Schedule A is an illustrative, non-exhaustive list of sound recordings and musical compositions of which the identified Plaintiff is and/or was at the time of infringement an owner or exclusive licensee in the United States of rights under copyright, which rights have been infringed by Defendants through PacSun Videos featuring the sound recording or musical composition identified that were posted and maintained by PacSun and/or one or more of the other Defendants on one or more of their owned or operated social media channels. Each listed sound recording and musical composition is registered in the United States Copyright Office.

33.     Plaintiffs' investigation is continuing, and discovery is likely to reveal additional infringements of Plaintiffs' copyrighted sound recordings and musical compositions. Plaintiffs intend to seek leave to amend this Complaint at an appropriate time to provide an expanded list of musical works infringed by Defendants.

## **Defendants' Infringing Conduct**

34.     PacSun is a leading specialty retailer selling a combination of proprietary and branded casual apparel, accessories, and footwear designed to appeal to young adults and teenagers.

35.     PacSun is privately owned by Golden Gate Capital, a private equity firm with $20 billion in assets under management, and financial information regarding PacSun is limited; however, PacSun's success is well documented. PacSun itself has acknowledged that it earns hundreds of millions of dollars annually, including $797.8 million in 2023 and over $900 million in 2022.[3] Moreover, PacSun has enjoyed a "notable acceleration of sales" in recent years and has declared its intent to open an

---

[3] *See* Tatiana Pile, *How Pacsun is leveraging music, sports, art and fashion to fuel growth*, GLOSSY (Jan. 14, 2025), *available at* https://www.glossy.co/fashion/how-pacsun-is-leveraging-music-sports-art-and-fashion-to-maintain-revenue-growth/; Ryma Chikhoune, *PacSun Is Back to $900M in Sales, Focused on Partnerships and a Digital-first Strategy*, Women's Wear Daily (Apr. 11, 2022), *available at* https://wwd.com/fashion-news/fashion-features/pacsun-900-million-sales-partnerships-digital-1235154525/  (PacSun's then co-CEO Alfred Chang: "[W]e're back to a business of over $900 million….We've got our sights set on returning to becoming an over billion-dollar business again.").

additional 15-20 stores in 2025, and another 25 in 2026.[4] Key to PacSun's continued

growth and success has been its strategic use of social media platforms to engage with

Generation Z and Generation Alpha audiences, and to promote its brand and products

on platforms such as Instagram, TikTok, YouTube, and X (formerly Twitter).[5]

    36.    PacSun creates and posts its own promotional content on social media. It

also partners with "influencers"—third parties to whom PacSun provides, upon

information and belief, compensation or other rewards in exchange for promoting

PacSun and its products.[6] By working with popular influencers, PacSun draws each of

these influencers' followers to PacSun's social media pages and to the PacSun Videos.

PacSun recruits these individuals—including, upon information and belief, those

featured in the PacSun Videos—to collaborate with PacSun, whereby participants are

rewarded for promoting PacSun products. Upon information and belief, PacSun

actively reviews, selects, reproduces and reposts selected influencer videos on

PacSun's own social media pages.

    37.    The PacSun Videos—those produced and posted directly by PacSun and

those produced by influencers and reposted by PacSun—are distributed to (among

others) PacSun's over *5.1 million* cumulative social media followers, and are a

significant means by which PacSun promotes its brand and products.

    38.    Critically, many of the PacSun Videos feature Plaintiffs' Musical Works

without any authorization for such use. Moreover, Plaintiffs' Musical Works are

integral to these PacSun Videos. The videos typically depict an individual promoting

---

[4] Pile, *supra* n.3.

[5] *See, e.g.*, https://www.tiktok.com/@pacsun?lang=enl; https://www.instagram.com/pacsun/?hl=en; https://www.youtube.com/pacsun; https://x.com/pacsun?lang=en; https://www.instagram.com/pacsunkids/?hl=en; https://www.tiktok.com/@pacsunkids.

[6] *See* Chikhoune *supra* n.3 (PacSun President and CEO Brieane Olson, praising the company's collaborations with content creators, "I think what PacSun is great at is *we make investments with talent and creators*, and we're willing to truly partner to bring those visions to life. Because we know they're so important to the core."); *see also* David Adler, *All About the PacSun Influencer Program*, Net Influencer (Nov. 4, 2022), *available at* https://www.netinfluencer.com/pacsun-influencer-program/ (describing the benefits of the PacSun affiliate program, including commissions and special offers).

COMPLAINT

PacSun's retail products, synchronized to an audio track of a popular sound recording. The audio track generally runs the full length of the PacSun Video and includes the most familiar portion of the sound recording and underlying musical composition, such as the hook or chorus. There is typically no speaking or sound other than the Plaintiffs' Musical Works integrated into the PacSun Videos.

39.    Plaintiffs' Musical Works are an essential and inseparable component of the PacSun Videos, which frequently feature an influencer lip-syncing to the work. For example, **Figure 1** below is a screen capture of a PacSun Video posted to PacSun's TikTok account featuring the unauthorized use of WMG's sound recording and musical composition "WHATS POPPIN" performed by Jack Harlow. The video, accompanied by a caption soliciting consumers to enter a PacSun contest to win a $500 PacSun gift card, features an influencer in a PacSun store surrounded by PacSun products and lip-syncing the lyrics of the infringed works.



**Figure 1**

40.    Similarly, **Figure 2** below is a screen capture reflecting a PacSun Video posted to PacSun's TikTok account featuring the unauthorized use of WMG's sound recording "Dreams" performed by Fleetwood Mac. The video features an influencer on his way "to shop 40% off on pacsun.com" while lip-syncing the lyrics of the infringed work.



**Figure 2**

41.     Moreover, PacSun often deliberately incorporates the theme or lyrics of Plaintiffs' Musical Works into the PacSun Videos' content. For example, **Figure 3** below reflects a PacSun Video posted to the PacSun Kids Instagram account featuring the unauthorized use of WMG's musical composition "Pose (feat. Megan Thee Stallion & Lil Uzi Vert)" performed by Yo Gotti. The video depicts children playing and posing in PacSun branded apparel, accompanied by a caption incorporating the musical work's lyrics—"but first pose. [] tell us which pose you're trying out first below."



**Figure 3**

11

COMPLAINT

42.    As in the previous example, **Figure 4** below reflects a PacSun Video posted to its TikTok account and further demonstrates PacSun's strategic use of connecting Plaintiffs' Musical Works to the content of PacSun Videos. The video, which features the unauthorized use of WMG's sound recording and musical composition "Don't Start Now" performed by Dua Lipa, portrays a would-be shopper who is "so excited to order" from PacSun and integrates the copyrighted musical work's on-point lyrics—"did a full 180"—to illustrate her change of heart about buying PacSun products despite them not being on sale.



**Figure 4**

43.    The PacSun Videos also use Plaintiffs' Musical Works to promote particular product lines sold by PacSun. **Figure 5** below reflects a PacSun Video posted to its TikTok account that features WMG's sound recording and musical composition "Lotus Flower Bomb (feat. Miguel)" performed by Wale. The video depicts a group of PacSun consumers dancing to the infringed work while promoting PacSun swimwear.

1
2
3
4
5
6
7
8
9
10



**Figure 5**

11
12
13
14
15
16
17

44.     Even when the portion of Plaintiffs' Musical Works used in a PacSun Video is relatively brief, it still plays a vital role in the video. **Figure 6** below, which reflects a PacSun Video posted to PacSun's TikTok account and features the unauthorized use of WMG's sound recording and musical composition "Lo Mein" performed by Lil Uzi Vert, depicts PacSun shoppers promoting PacSun clothing for boosting self-confidence.

18
19
20
21
22
23
24
25
26
27
28



**Figure 6**

45.     None of the foregoing uses (nor use of any of Plaintiffs' Musical Works listed in Schedule A) was authorized by or licensed from Plaintiffs, and PacSun did not compensate Plaintiffs in any manner for the unauthorized uses.

46.     Upon information and belief, there are many more infringing videos created by PacSun and the other Defendants and their respective social media influencers, but Plaintiffs have thus far been unable to discover all infringing videos. Among other things, contrary to FTC guidelines, many of those influencers do not disclose that they are being compensated for the advertisement; moreover, upon information and belief, some of the infringing videos were posted only for a limited period of time.

47.     Social media postings, and in particular the PacSun Videos, are a significant means by which Defendants advertise their products. Accordingly, Defendants devote substantial resources to their social media advertising efforts. Upon information and belief, in addition to the compensation and rewards that Defendants provide influencers, Defendants' professional staff are directly involved in creating, reproducing, and/or distributing the PacSun Videos. Upon information and belief, this includes (1) commissioning, reviewing, and selecting videos for use on social media; (2) directly working with and overseeing social media influencers with whom PacSun partners, including by providing advice and direction as to the content of the promotional videos; (3) specifically encouraging social media influencers to create video content and feature PacSun products in their videos, including the infringing PacSun Videos; and (4) actively reviewing influencer-made PacSun Videos and then promoting and/or redistributing the videos by posting them on PacSun's own social media pages.

48.     Defendants' investment in social media advertisements, and in the PacSun Videos in particular, has been critical to Defendants' success. PacSun President and CEO Brieane Olson recently emphasized the company's commitment to expanding digital sales, particularly those driven by TikTok, stating that "from a

social commerce standpoint, that will continue to be a focus."[7] In the same vein, PacSun launched a YouTube campaign earlier this year aimed at boosting social media engagement to increase sales.[8]

49.    PacSun not only relies on social media to engage with consumers and drive revenue, but it also sells its merchandise directly through social media channels such as TikTok and Instagram. For instance, PacSun sold 200,000 pairs of jeans on TikTok after an influencer's post caused the product to go viral, generating *$20 million* in revenue.[9] Ms. Olson has praised this type of "livestream selling" on TikTok for delivering "amazing engagement from the consumer."[10] Following an interview given by Ms. Olson to Glossy, the outlet wrote, "social media [is] to thank for the brand's resurgence."[11]

50.    PacSun has invested in its digital advertising for years, and upon information and belief, PacSun has long employed a team of marketing professionals focused on driving social media and influencer engagement. As far back as 2021, then-co-CEO Alfred Chang highlighted the significance of "the digital world and the Gen Z consumer," attributing the company's growth to its "continued investments" in digital initiatives. These efforts, he noted, "allowed the brand to digitally connect with

---

[7] Peter Adams, *Pacsun's TikTok marketing won over Gen Z. What's next amid ban anxiety?*, Capital Computer Group (Mar. 13, 2025), *available at* https://capcom-ncr.com/insights/2025/pacsuns-tiktok-marketing-won-over-gen-z-whats-next-amid-ban-anxiety.

[8] *YouTube Stars Take Over Pacsun's Spring 2025 Campaign*, PR Newswire (Feb. 7, 2025), *available at* https://www.prnewswire.com/news-releases/youtube-stars-take-over-pacsuns-spring-2025-campaign-302371084.html.

[9] Sharon Edelson, *Pacsun Builds Viral Products With Help From Its Consumers*, Forbes (Mar. 31, 2025), *available at* https://www.forbes.com/sites/sharonedelson/2025/03/31/pacsun-builds-viral-products-with-help-from-its-consumers/.

[10] Julia Waldow, *Despite a looming TikTok ban, social commerce takes center stage at NRF*, ModernRetail (Jan. 15, 2025), *available at* https://www.modernretail.co/technology/despite-a-looming-tiktok-ban-social-commerce-takes-center-stage-at-nrf/.

[11] Pile, *supra* n.3.

[its] customers" on TikTok, contributing to what he described as "explosive growth."[12]

51.    Defendants have been wildly successful employing this marketing strategy, garnering millions of followers across social media platforms and as a result, earning **hundreds of millions** of dollars in annual revenues.

52.    However, Defendants achieved that success through their blatant, willful, and repeated copyright infringement, including the infringement of at least 290 of Plaintiffs' most popular and valuable sound recordings and musical compositions, including recordings and compositions by some of Plaintiffs' top recording artists and songwriters. PacSun derives a direct financial benefit from the highly promotional nature of the infringing videos created by PacSun and its social media influencers, driven by the unlicensed music in those videos, which encourage consumers to buy PacSun's products and increase PacSun's brand awareness and profile.

53.    Defendants' infringement was clearly willful. Among other things, the social media platforms on which the infringing PacSun Videos were posted expressly state that users have no right to post music in connection with commercial activities without proper authorization.

54.    For example, the Instagram Terms of Use incorporate "Music Guidelines," which are maintained in the "Legal" section of the website for Instagram's parent company, Meta. Those Music Guidelines expressly provide as follows: "Use of music for commercial or non-personal purposes in particular is prohibited unless you have obtained appropriate licenses."[13] And this prohibition is not a recent development. As evidenced on archive.org (the so-called "Wayback

---

[12] Yola Robert, *Pacsun Paces To $1 Billion In 2021 As They Innovate Digital*, Forbes (Aug. 13, 2021), *available at* https://www.forbes.com/sites/yolarobert1/2021/08/13/pacsun-paces-to-1-billion-in-2021-as-they-innovate-digital/.

[13] *Terms of Use*, Instagram, http://help.instagram.com/581066165581870 (incorporating Music Guidelines); *Music Guidelines*, Facebook, *available at* https://www.facebook.com/legal/music_guidelines.

Machine"), this specific prohibition has been incorporated in the Instagram and Meta Terms of Use since at least May 2018.[14]

55.     Similarly, the TikTok Terms of Service unequivocally state that no rights are granted respecting use of sound recordings and musical compositions:

> NO RIGHTS ARE LICENSED WITH RESPECT TO SOUND RECORDINGS AND THE MUSICAL WORKS EMBODIED THEREIN THAT ARE MADE AVAILABLE FROM OR THROUGH THE SERVICE.[15]

56.     By virtue of operating social media accounts through these platforms, Defendants had actual or constructive knowledge of these express prohibitions.

57.     PacSun's willfulness is further evidenced by the fact that, even after receiving notice of Plaintiffs' claims by letter, not only did PacSun explicitly choose to ignore the demand, its infringement both ***continued*** unabated as to several of the works identified by Plaintiffs and ***expanded*** to include new, additional infringements. On February 13, 2024, Plaintiffs sent PacSun a cease-and-desist letter concerning PacSun Videos featuring unauthorized use of Plaintiffs' Musical Works. Yet, for *months* after receiving the cease-and-desist letter, PacSun not only continued to exploit many of the infringing PacSun Videos, but also posted new infringing PacSun Videos.

58.     PacSun is not unfamiliar with intellectual property laws and actively enforces its own intellectual property rights. The "Terms of Use" on PacSun's own website include robust provisions safeguarding *PacSun's* intellectual property

---

[14] *See, e.g.,* https://web.archive.org/web/20180517224131/https://www.facebook.com/legal/music_guidelines (Music Guidelines on Meta (f/k/a Facebook) Terms of Use as of May 2018); https://web.archive.org/web/20180522151952/http://help.instagram.com/581066165581870 (Instagram incorporation of and link to Meta Music Guidelines as of May 2018).
[15] *Terms of Service*, TikTok, *available at* https://www.tiktok.com/legal/terms-of-service?lang=en.

1    interests.[16] PacSun has also used litigation to enforce its intellectual property rights

2    against alleged infringers. *See, e.g.*, *Pac. Sunwear of California, Inc. v. Kira*

3    *Plastinina Style, Ltd.*, 364 F. App'x 330 (9th Cir. 2010). Moreover, given PacSun's

4    commercial success and market presence, it has no shortage of legal resources.

5        59.    Courts specifically have held that the same type of conduct engaged in by

6    PacSun constitutes copyright infringement.  On July 11, 2022, United States District

7    Judge William P. Dimitrouleas granted partial summary judgment to another music

8    company, Universal Music Group, in its action against Bang Energy.[17] In its order, the

9    court found that it was "undisputed that [Bang Energy] posted approximately 140

10   TikTok videos utilizing portions of [Universal Music Group's] copyrighted works,"

11   and concluded that the Bang defendants were liable for direct copyright infringement

12   as a matter of law.[18] Similarly, on September 14, 2022, Judge Dimitrouleas granted

13   partial summary judgment to another music company, Sony Music Entertainment, in

14   its separate action against Bang Energy, concluding that the Bang defendants were

15   liable for both direct and vicarious copyright infringement as a matter of law.[19]

16                          **FIRST CLAIM FOR RELIEF**

17            **Direct Copyright Infringement Against Defendants**

18                      **(U.S.C. § 101 *et seq.*)**

19       60.    Plaintiffs incorporate paragraphs 1 through 59 of this Complaint as if

20   fully set forth herein.

21

22

23   [16] *See* https://www.pacsun.com/company/terms-of-use.html (*e.g.*, "All text, designs,
     graphics, logos, page headers, button icons, scripts, service names, manuals, technical
     documentation, product information, user interfaces, visual interfaces, images,
24   photographs, trademarks, sounds, music, and artwork (collectively, 'Content'),
     including but not limited to the design, structure, selection, coordination, expression,
25   'look and feel,' and arrangement thereof, appearing via the Services are owned,
     controlled or licensed by or to Pacsun, and are protected by trade dress, copyright,
26   patent and trademark laws, and various other intellectual property rights and unfair
     competition laws.").
27   [17] *UMG Recs.*, 2022 WL 2670339, at *7.
     [18] *Id.*, at * 7
28   [19] *Sony*, 2022 WL 4771858, at *7-13.

61.    Plaintiffs are the owners or exclusive licensees in the United States of rights under copyright of the Plaintiffs' Musical Works identified in Schedule A, as reflected in that schedule, which copyrights are valid and subsisting.

62.    Defendants' creation, posting/reposting, and/or streaming of the PacSun Videos infringe Plaintiffs' copyrights. Among other things, Defendants have unlawfully reproduced, prepared derivative works from, distributed, publicly performed, and/or publicly performed by means of a digital audio transmission, the copyrighted Plaintiffs' Musical Works listed in Schedule A without authorization, in violation of 17 U.S.C. § 106(1), (2), (3), (4), and/or (6).

63.    Defendants' acts of infringement have been knowing, deliberate, and willful, and in utter disregard for Plaintiffs' rights.

64.    Defendants are liable for direct copyright infringement. *See Sony*, 2022 WL 4771858, at *8 ("[I]t is undisputed that Defendants directly posted approximately 286 social media videos utilizing portions of Plaintiffs' copyrighted works [without authorization] . . . Courts have found that the unauthorized reproduction, distribution and public performance of sound recordings via the internet violates the Copyright Act . . . Both elements of a direct copyright infringement claim having been established based upon the undisputed material facts . . . Plaintiffs are entitled to partial summary judgment against Defendants.").

65.    As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to actual damages and Defendants' profits from infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b).  In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

66.    Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

67.     Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## SECOND CLAIM FOR RELIEF

### Contributory Copyright Infringement Against Defendants

### (17 U.S.C. § 101 *et seq.*)

68.     Plaintiffs incorporate paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69.     As detailed above, the third-party social media influencers who created and distributed the PacSun Videos have likewise infringed Plaintiffs' copyrights. Defendants are liable as contributory copyright infringers for the infringing acts of these influencers. Additionally, or alternatively, Defendants are liable as contributory copyright infringers by making the PacSun Videos available to the users and subscribers of the social media platforms referenced above.

70.     Upon information and belief, Defendants have knowledge of influencers' infringing activity (or have reason to know or are willfully blind to such infringing activity). Among other things, PacSun's influencers generally tag PacSun's corporate accounts; upon information and belief, PacSun receives a notification from the relevant platform each time it is tagged and reviews posts that tag PacSun's accounts. As set forth above, Defendants had actual or constructive knowledge that the influencers' and Defendants' use of Plaintiffs' Musical Works in PacSun Videos was not licensed or otherwise authorized, and was infringing.

71.     In addition, by promoting and/or assisting with the creation of the infringing PacSun Videos, including without limitation through Defendants' compensation or rewards to influencers, and/or by causing them to be copied, made

available, and transmitted over the social media platforms referenced above, Defendants materially contributed to the infringing reproduction, preparation of derivative works, distribution, and/or public performance of the copyrighted works contained in the PacSun Videos, including but not limited to the Plaintiffs' Musical Works listed in Schedule A.

72.    In addition, Defendants have induced such infringement, including by promoting such infringement through compensation and/or rewards to social media collaborators and influencers, posting and/or reposting the infringing PacSun Videos, and specifically referring to the sound recordings and musical compositions used in the infringing PacSun Videos.

73.    Defendants' acts of contributory infringement are knowing, deliberate, willful, and in utter disregard for Plaintiffs' rights.

74.    As a direct and proximate result of Defendants' contributory infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b). In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each musical work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

75.    Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

76.    Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting Defendants' contributory infringement of Plaintiffs' copyrights and exclusive rights under copyright.

**THIRD CLAIM FOR RELIEF**

**Vicarious Copyright Infringement Against Defendants**

**(17 U.S.C. § 101 *et seq.*)**

77.     Plaintiffs incorporate paragraphs 1 through 76 of this Complaint as if fully set forth herein.

78.     As detailed above, third-party social media influencers who created and distributed the PacSun Videos have likewise infringed Plaintiffs' copyrights, and Defendants are vicariously liable for the infringing acts of these influencers. Additionally, or alternatively, Defendants are liable as vicarious copyright infringers by making the PacSun Videos available to the users and subscribers of the social media platforms referenced above.

79.     Defendants have exercised the right, ability, and authority to control and supervise the placement of the infringing PacSun Videos on the social media platforms referenced above. Defendants also have the ability to remove the infringing PacSun Videos from each platform. Moreover, upon information and belief, Defendants maintain the right and ability to control their influencers' infringement, as they are able (but have failed) to place conditions on the provision of commissions or other consideration to influencers, such as compliance with copyright laws, or to penalize influencers or terminate relationships with influencers who infringe.

80.     Defendants receive a direct financial benefit from the infringing reproduction, preparation of derivative works, distribution, and/or public performance of the copyrighted works contained in the PacSun Videos, including but not limited to the Plaintiffs' Musical Works listed in Schedule A, including (among other financial benefits) increased brand recognition and product sales.

81.     Defendants' acts of vicarious infringement are knowing, deliberate, willful, and in utter disregard for Plaintiffs' rights.

82.     Thus, because Defendants had the ability to control, supervise, and remove the infringing PacSun Videos posted by third parties, and they received a

direct financial benefit from the distribution and/or public performance of the copyrighted works contained in the infringing PacSun Videos, Defendants are liable for vicarious copyright infringement.

83.     As a direct and proximate result of Defendants' vicarious infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b). In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each musical work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

84.     Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

85.     Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting Defendants' vicarious infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.     for a permanent injunction pursuant to 17 U.S.C. § 502, requiring that Defendants, and their officers, agents, servants, employees, attorneys, and others in active concert or participation with each or any of them, cease infringing, or causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of, any of Plaintiffs' copyrights protected by the Copyright Act, whether now in existence or hereafter created;

2.    for statutory damages pursuant to 17 U.S.C. § 504(c), up to the maximum amount of $150,000 per infringed work, or such other amounts as may be proper under 17 U.S.C. § 504(c), or, in the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs' actual damages and Defendants' profits from infringement, in amounts to be proven at trial;

3.    for Plaintiffs' costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505 and otherwise;

4.    for prejudgment and post-judgment interest; and

5.    for such other and further relief as the Court may deem just and proper.

Dated:    December 1, 2025

SIDLEY AUSTIN LLP

By: /s/ *Rollin A. Ransom*
Rollin A. Ransom
Lauren M. De Lilly

*Attorneys for Plaintiffs*

COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

Pursuant to Local Rule 38-1 and Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury.

Dated:   December 1, 2025

SIDLEY AUSTIN LLP


By:   /s/ *Rollin A. Ransom*
Rollin A. Ransom
Lauren M. De Lilly

*Attorneys for Plaintiffs*

25
COMPLAINT